## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA HACKWORTH, individually and on behalf of those similarly-situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.        3:21-cv-114 |
| | ) | |
| HARRIMAN UTILITY BOARD, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT
## FOR SYSTEMATIC NONPAYMENT OF WAGES

Comes Plaintiff Joshua Hackworth, by and through counsel, and, for his Collective and Class Action Complaint against Defendant Harriman Utility Board, states as follows:

### INTRODUCTION TO THE ACTION

1.      Defendant Harriman Utility Board has for years illegally and systematically deprived Plaintiff and numerous other similarly-situated employees of overtime compensation owed for work that is not exempt under the Fair Labor Standards Act (FLSA).  Under the FLSA, employers must *accurately* track employee work time and pay overtime compensation to non-exempt workers for all hours worked beyond forty in a workweek at a rate of one and one-half times their "regular rate" of pay (which includes all compensation for work performed, not just the "base hourly rate").  Defendant illegally and systematically deprived its non-exempt employees of overtime wages in at least four ways.  First, it illegally shaved work time from the beginning and end of each shift, ignoring the actual clock-in/clock-out time stamped on the face of the employee timecard and instead paying the employee only from the fifteen-minute interval *after* the employee clocked in until the fifteen-minute interval *before* the employee clocked out.   Second, even for the

hours Defendant did pay, Defendant only paid employees overtime pay at the rate of 1.5 time their "base hourly rate" of pay, but this overtime rate of pay does not include the required overtime compensation owed for other types of compensation Defendant paid for work performed, such as safety bonus compensation and "standby" compensation. Third, Defendant requires employees to attend certain community events, such as "Hooray for Harriman," but does not treat the time spent at those events as time worked for purposes of calculating employees' overtime pay. Finally, defendant automatically deducts a set amount from each employee's pay (for example, thirty minutes per day) for lunch although employees do not always actually receive that full amount of time for lunch. Because Defendant's violations of the FLSA[1] were willful and not in good faith, Defendant should be required to pay Plaintiff and the similarly-situated employees[2] two times the amount[3] it illegally cheated them in unpaid overtime compensation, plus attorney's fees and other expenses of this action.

### Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, including 29 U.S.C. § 216(b).

---

[1] In addition to violating the FLSA, Defendant also deprived employees of wages recoverable under state law by the same illegal practices of (A) shaving employee start and stop times, (B) not paying employees for attending required events and (C) always deducting lunch even if a full lunch was not taken. These practices, in addition to depriving employees of overtime pay, also has the effect of depriving employees of premium pay promised by Defendant for work in excess of eight hours in a day.

[2] A consent form which similarly-situated employees may use to opt-in to this action under the FLSA is attached hereto as Exhibit 12.

[3] The FLSA allows an employee to recover two times the amount of unpaid overtime compensation under these circumstances. 29 U.S.C. § 216(b) ("[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their … their unpaid overtime compensation, … and in an additional equal amount as liquidated damages…. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.")

2

2.     This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under Tennessee common law because they are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under the FLSA.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendant's primary place of business is located in Harriman, Roane County, Tennessee within the District of this Court and Plaintiff worked for Defendant in Harriman, Roane County, Tennessee within the District of this Court.

## Parties

4.     Plaintiff is an individual former employee of Defendant.

5.     Throughout his employment Plaintiff resided and worked for Defendant in the State of Tennessee.

6.     Defendant is a utility operating in Harriman, Roane County, Tennessee; upon information and belief, Defendant may be served by service of process on its General Manager, Candace Vannasdale.

7.     At all times material to this action, Defendant has been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

8.     Defendant is a utility, and maintains a electrical, water and natural gas systems that deliver and sell electricity, water and natural gas to residential, commercial and industrial customers in the Harriman, Tennessee area.

9.     Defendant's employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

10.    Defendant's annual gross volume of sales made or business done exceeds $500,000.

11. Defendant reports in its 2020 annual report that it has over 12,000 customers.

12. The unlawful acts alleged in this Complaint were committed by Defendant and/or its officers, agents, employees, or representatives, while actively engaged in the management of Defendant's businesses or affairs and with the authorization of Defendant.

13. Plaintiff was an employee of Defendant and he and his work were covered by the FLSA.

14. During all times relevant, Defendant was an employer and/or enterprise covered by the FLSA.

15. Defendant employs numerous other non-exempt employees in the state of Tennessee.

16. Defendant reports in its 2020 annual report that it has 76 full-time employees; while, upon information and belief, it does not classify all of those employees as non-exempt under the FLSA, it classifies the majority of those employees as non-exempt under the FLSA.

## Collective Definitions

17. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following proposed collective group:

> All current and former hourly employees of Defendant who worked in excess of 40 hours in one or more workweeks during the applicable limitations period and were not fully paid all overtime compensation owed (the "FLSA Collective")

18. Plaintiff reserves the right to redefine the proposed collective group prior to notice and/or "de-certification" of the collective group, as may be warranted, appropriate and/or necessary.

## Facts

19. Plaintiff was employed by Defendant Harriman Utility Board from prior to 2015

until May, 2020.

20.     Throughout his employment, Plaintiff worked a position that was non-exempt under the Fair Labor Standards Act.

21.     Specifically, Plaintiff worked in Defendant's right-of-way department, which was responsible for maintaining utility rights-of-way, generally by cutting and otherwise addressing brush and vegetation which would encroach upon the right-of-way if not addressed.

22.     Defendant itself categorized Plaintiff as an hourly employee who was non-exempt under the Fair Labor Standards Act.

**Defendant Illegally Shaves Employee "Start" and "Stop" Times in Favor of Defendant**

23.     Defendant required its non-exempt employees to "clock in" at the beginning of the workday and "clock out" at the end of the workday utilizing a timecard.

24.     Specifically, in general,[4] at the beginning of every workday, the employee would physically remove the timecard from a space where the timecard was stored, insert it into Defendant's time clock machine which would print on the timecard the exact date and time (to the minute) of the clock-in, and would then store the timecard in a separate space for employees who were currently clocked in and begin performing work.

25.     At the end of each shift, the employee would repeat the process in reverse.

26.     Specifically, after completing work, the employee would take the timecard from the space to where it had been stored while the employee was clocked in, insert it into the machine which would print upon the timecard the exact date and time, to the minute, when the employee

---

[4]     Upon information and belief, with respect to certain employees and/or during certain times periods, employees would write their "start" and "stop" times to timecards by hand, rather than having the time stamped on the timecard by a timeclock.  However, Defendant applied its same illegal time-shaving policy to these time periods, and Plaintiff seeks relief on behalf of himself and similarly-situated employees, whether the timecard was completed by hand or by timeclock.

clocked out, and then placed the timecard in the space provided for the storing of timecards for persons who clocked out.

27.     Defendant's timeclock captured the time employees clocked in and clocked out to the exact minute.

28.     However, Defendant did not utilize the actual time that each employee clocked in or clocked out in calculating the amount of time the employee would be paid for working.

29.     Instead, Defendant paid employees from the point in time constituting the first fifteen-minute interval that occurred *after* the minute that the employee clocked in.

30.     Stated another way, Defendant always "shaved" the clock-in time; i.e., created a new artificial "start" time different from the "start" time shown on the face of the timecard; the time used for the new artificially "shaved" start time was the first fifteen-minute interval that was the same as or *after* the actual clock-in time shown on the face of the timecard.

31.     Defendant's policy was to never "round down" the clock-in time; i.e., Defendant's policy was to never round the clock-in time to the fifteen-minute interval that was *prior to* the clock-in time, even if the fifteen-minute interval that was prior to the clock-in time was closer in time to the clock-in time than the nearest fifteen-minute interval that was after the clock-in time.[5]

32.     For instance, if an employee clocked in at 6:48 am, Defendant would calculate the number of hours worked from a "start time" of 7:00 am, even though 6:45 am is a fifteen-minute

---

[5]     Upon information and belief, a policy of rounding to the nearest fifteen minutes would not have been fair, on average, to the employee, but would instead result in employees, on average, being deprived of compensation for work performed. Accordingly, while Plaintiff contends, as set out in the test, that Defendant did not round to the nearest fifteen-minute interval in calculating employee work time (and instead of rounding, always instead "shaved" time by changing both the start and stop time from any non-fifteen-minute increment to the next fifteen-minute increment favorable to Defendant, or, in other words, the next fifteen-minute interval in the direction that reduces the amount of work time to be credited), in the alternative, if a factual finding is made that Defendant did round to the nearest fifteen-minute interval in calculating work time, review of the actual clock-in and clock-out times would have revealed to Defendant that its rounding practice was not fair on average to the employee, but instead deprived the employee of pay, on average, and therefore violated the FLSA. See 29 C.F.R. § 785.48(b).

increment of time and 6:48 am is closer in time to 6:45 am than it is to 7:00 am.

33.     Similarly, if an employee clocked in at 7:56 am, the employee would be paid based on a start time of 8:00 am.

34.     Further, Defendant's policy is not restricted to utilizing start times that were hour or half-hour increments; under Defendant's policy, an employee who clocked in at 7:01 am would be treated for purposes of pay as having started work at 7:15 am and would not be paid for the work performed between 7:01 am and 7:15 am.

35.     In addition, a similar principle was applied by Defendant to work at the end of employees' shifts.

36.     Specifically, the time worked by the employee, as recorded to the minute by Defendant's timekeeping device, would, as it had been at the beginning of the shift, also be "shaved" to the nearest fifteen-minute interval *in the direction favorable to the Defendant* at the end of the shift.

37.     Stated another way, Defendant always "shaved" the clock-out time; i.e., created a new artificial "stop" time different from the "stop" time shown on the face of the timecard; the time used for the new artificially "shaved" stop time was the first fifteen-minute interval that was the same as or *before* the actual clock-out time shown on the face of the timecard.

38.     Defendant's policy was to never "round up" the clock-out time; i.e., Defendant's policy was to never round the clock-out time to the fifteen-minute interval that was *after* the clock-out time, even if the fifteen-minute interval that was *after* the clock-out time was closer in time to the actual clock-out time than the nearest fifteen-minute interval that was b*efore* the clock-out time.

39.     In other words, if an employee clocked out at 4:06 pm, the employee would be paid

from the "start time" until 4:00 pm.

40.     Similarly, if an employee clocked out at 4:11 pm, the employee would be paid only until 4:00 pm.

41.     Further, if an employee clocked out at 3:55 p.m., the employee would be paid only until 3:45 p.m.

42.     Defendant did not have any policy prohibiting employees from working after clocking in; to the contrary, employees were expected by Defendant to, and did, work after clocking in (including working during the "shaved" period of time after the clock-in but before the next fifteen-minute increment for which the employee would not be paid).

43.     Defendant also did not have any policy prohibiting employees from working after the last fifteen-minute increment prior to clocking out; to the contrary, employees were expected by Defendant to, and did, work until clocking out (including working during the "shaved" period of time after the last fifteen-minute increment but before the clock-out for which the employee would not be paid).

44.     Employees regularly began and ended their work at times that did not exactly coincide with a fifteen-minute interval, and Defendant's practice of shaving start and stop times of employees to the fifteen minute interval most favorable to Defendant (and never paying for work performed prior to the first fifteen-minute interval of the day following the clock-in time and never paying for work performed after the last fifteen-minute interval of the day prior to the clock-out time) resulted in Defendant, over the course of time, cheating each of Plaintiff and the similarly-situated employees out of pay for a large and substantial amount of work performed.

45.     As Example 1, attached hereto as Exhibit 1 is Plaintiff's timecard for the pay period ending January 10, 2020.

8

46.     Exhibit 1 shows that on January 9, 2020, Plaintiff worked until 4:02 pm.

47.     However, Defendant only credited Plaintiff with having worked until 4:00 pm on that date and, although Plaintiff worked more than eight and one-half hours in that day, only paid Plaintiff for eight hours worked in that day (after deducting an automatic one-half hour for lunch, a practice addressed separately in a separate section of this Compliant below).

48.     As Example 2, attached hereto as Exhibit 2 is Plaintiff's timecard for the pay period ending January 24, 2020.

49.     On January 23, 2020, Plaintiff clocked in at 7:31 am and clocked out at 4:07 pm.

50.     Plaintiff's timecard for this period ending January 24, 2020 shows on its face (under the column entitled "hours worked") that there was eight hours and thirty-six minutes between the time that Plaintiff clocked in at 7:31 am and the time that Plaintiff clocked out at 4:07 pm.

51.     However, Defendant only paid Plaintiff for eight hours for Plaintiff's work on January 23, 2020.

52.     Defendant's management wrote on Plaintiff's timecard for the period ending January 24, 2020 the following: "1/24/2020-Dusty spoke with Josh Re: late will begin docking time the same as all other employees."

53.     Upon information and belief, the member of Defendant's management who wrote the note on Plaintiff's timecard regarding "docking time the same as all other employees" that is quoted in the preceding paragraph was Dusty Fagan.

54.     Dusty Fagan is, and was on January 24, 2020, Defendant's Manager of Finance.

55.     As Example 3, attached hereto is Exhibit 3 is Plaintiff's timecard for the period ending February 7, 2020.

56.     On January 27, 2020 Plaintiff clocked in at 7:32 am and clocked out at 4:04 pm.

9

57.     Defendant shaved Plaintiff's "start" time from 7:32 am until 7:45 am.

58.     Although eight hours and thirty-two minutes elapsed from the time that Plaintiff clocked in at 7:32 am until the time he clocked out at 4:04 pm and that fact appeared on the face of Plaintiff's time card under the "hours worked" column, Defendant paid Plaintiff for 7.75 hours of work on January 27, 2020.

59.     Defendant did not pay Plaintiff for his work from 7:32 am until 7:45 am on January 27, 2020.

60.     Defendant did not pay Plaintiff for his work from 4:00 pm until 4:04 pm on January 27, 2020.

61.     Instead, utilizing its "time shaving" practice, Defendant paid Plaintiff for his work on January 27, 2020 based on the following calculation: after shaving start and stop times to the closest fifteen minute interval in the direction favorable to Defendant, Defendant calculated that Plaintiff would be paid for work from 7:45 a.m. until 4:00 p.m., which totals 8.25 hours, and subtracted from this total one-half hour for lunch, to determine that Plaintiff would be paid for 7.75 hours of work on January 27, 2020.

62.     As Example 4, attached hereto as Exhibit 4 is Plaintiff's timecard for the period ending March 6, 2020.

63.     Plaintiff clocked in at 7:31 am on March 6, 2020.  Plaintiff clocked out at 4:03 pm on March 4, 2020.

64.     Plaintiff's timecard showed on its face (under the column entitled "hours worked") that eight hours and thirty-two minutes elapsed from the time Plaintiff clocked in at 7:31 am until the time he clocked out at 4:03 pm.

65.     Defendant shaved Plaintiff's start time from 7:31 am until 7:45 am.

66.     Defendant shaved Plaintiff's stop time from 4:03 pm until 4:00 pm.

67.     Defendant only paid Plaintiff for 7.75 hours of work on February 4, 2020.

68.     The timecards attached hereto as Exhibits 1-4 are the only timecards for Plaintiff's work for Defendant work of which Plaintiff has copies, other than the timecards included in Exhibits 8 and 9, which are collective exhibits of timecards discussed below.

69.     Attached hereto is Exhibit 5 is Defendant's Employee Policy Manual.

70.     Defendant's Employee Policy Manual provides, at Section 5.03, the following:

PAY FOR FULL TIME, NON-EXEMPT EMPLOYEES
A.      In general, the following applies to Full Time, Non-Exempt employees:
        1.      A Full Time employee works the standard working hours set by HUB each week.
        2.      Non-Exempt employees receive overtime in compliance with the Fair Labor Standards Act (FLSA), and with HUB's overtime policy.

B.      Non-Exempt employees will use Time Cards to record his/her hours worked, including approved hours beyond his/her standard hours.  Non-Exempt employees will "clock-in" when he/she report for duty, and "clock out" when released….

71.     Plaintiff and similarly-situated employees were deprived of overtime compensation as a result of Defendant's "time shaving" policy.

72.     Specifically, in one or more workweeks, Plaintiff and each similarly-situated employee worked more than forty hours in the workweek[6] and would have been paid for a greater amount of overtime work if HUB had appropriately paid the employee based on the actual amount of time from "clock-in" to "clock-out", as shown on the face of the timecard, but was instead deprived of overtime pay earned because Defendant applied its "time shaving" policy.

_____

[6]      Plaintiff acknowledges that the timecards attached as Exhibits 1-4 do not reflect a workweek during which Plaintiff worked more than 40 hours; however, Plaintiff does not have all of his timecards.  Upon information and belief, Plaintiff's timecards will show many weeks during both the two years and the three years preceding the filing of this Complaint in which Plaintiff worked more than forty hours, but was paid for an incorrect, artificially low number of overtime hours because of Defendant's illegal time shaving practices described herein.

11

73. Defendant followed this practice for all of its non-exempt employees.

74. For instance, as Example 5, on November 21, 2019, employee Willie Gallaher clocked-in at 7:01 am and clocked-out at 4:10 pm.

75. Defendant's timeclock automatically stamped on Mr. Gallaher's timecard that nine hours and nine minutes had elapsed from the time of Mr. Gallaher's clock-in until Mr. Gallaher's clock-out.

76. Nevertheless, Defendant shaved the 7:01 clock-in until 7:15, shaved the 4:10 clock-out to 4:00, and subtracted one hour for lunch, with the result that Defendant credited Mr. Gallaher working only 7.75 hours on this day.

77. If HUB had simply deducted one hour for lunch from the amount shown for Mr. Gallaher under the "hours worked" column of the timecard for this day (assuming he actually took a full one-hour lunch), it should have credited him with eight hours and nine minutes of work.

78. However, not only did HUB not round this eight hours and nine minutes to the nearest fifteen minute increment (which would have been eight hours and fifteen minutes), but it did not even merely shave Mr. Gallaher's total amount of time from eight hours and nine minutes to eight hours; instead, it both shaved his clock-in time (depriving him of pay for the fourteen minutes of work from 7:01 until 7:15) and shaved the clock-out time (depriving him of pay for the ten minutes of work from 4:00 p.m. until 4:10 p.m.) to credit Mr. Gallaher with only 7.75 hours of regular pay for the day, depriving him of twenty-four minutes of wages for the day (Defendant charged Mr. Gallaher .25 of an hour for sick leave and paid him for eight hours for the day – 7.75 hours of regular work and .25 hours of sick leave).

79. A true and accurate copy of Mr. Gallaher's timecard for the pay period ending November 29, 2019 is attached hereto as Exhibit 6.

80.     As Example 6, employee Angela Skidmore clocked-in prior to 8:00 am and clocked-out after 5:00 pm on every day she worked during the pay period ending November 29, 2019, including clocking-in at 7:50 am and clocking-out at 5:12 pm on November 27, 2019 (the day before Thanksgiving).

81.     HUB paid Ms. Skidmore exactly eight hours for each day Ms. Skidmore worked, ignoring the overtime work she performed prior to 8:00 am and after 5:00 pm on every day she worked during this pay period, despite that time clearly appearing on the face of her timecard.

82.     A copy of Ms. Skidmore's timecard for the pay period ending November 29, 2019 is attached hereto as Exhibit 7.

83.     To further illustrate the allegations in this Complaint, timecards for Defendant's employees' work for the pay periods ending April 20, 2018, November 29, 2019, August 21, 2020, and March 5, 2021, together with Defendant's management's handwritten annotations regarding the artificially low amounts of time employees were credited by Defendant with having worked during those time periods are attached hereto as Exhibits 8, 9, 10 and 11, respectively.

**When Defendant Did Pay Overtime Compensation, It Paid Overtime Compensation At An Incorrect, Artificially Low Overtime Rate Of Pay**

84.     The FLSA requires that, when overtime compensation is owed, it must be paid at a rate of one and a half times the employees' "regular rate" of pay; the "regular rate" of pay is not the base hourly rate but is instead "determined by dividing the employees' total remuneration for employment… in any work week by the total number of hours actually worked by the employee in that work week for which such compensation was paid."  29 C.F.R. § 778.109.

85.     Plaintiff and the similarly-situated employees were paid other forms of compensation for work performed besides their base hourly rate but, upon information and belief, Defendant illegally failed and refused to take these other forms of compensation into account in

calculating the overtime rate to be paid to Plaintiff and the similarly-situated employees for their overtime work; instead, paid Plaintiff and the similarly-situated employees only 1.5 times the base rate of pay.

86.    For example, Plaintiff and other similarly-situated employees were paid safety bonuses for working in a safe manner.

87.    These bonuses would be periodically paid to Plaintiff and similarly-situated employees and would be in a lump sum amount that was paid to the employees without regard to how much overtime work each employee had performed (and without regard to the total amount of wages earned by each employee).

88.    For example, all employees in a particular department may be awarded a one-hundred-dollar bonus for the safe work of that department.

89.    Defendant would promise in advance to pay these safety bonuses to employees at the end of a period if certain safety goals were met; therefore, the payment of the bonuses was not discretionary and was payment for employees' work during the period.

90.    Defendant did not include any amount on account of the safety bonus payments in its calculation of employees' overtime rates of pay; instead, upon information and belief, Defendant simply paid 1.5 times the employees' base rate of pay to the employee when it chose to pay the employee overtime compensation.

91.    Indeed, Defendant's Employee Manual states that "Overtime will be calculated as follows:… Hours worked in continuation of an eight (8)-hour working day shall be paid at one and one-half the Straight Time rate (except as otherwise defined within this policy)".

92.    No other section of the Employee Manual discusses overtime compensation being paid on any basis other than "one and one-half the Straight Time rate," except with respect to work

in excess of sixteen hours in a day.

93.    Similarly, Defendant promised in advance that it would pay employees certain amounts of pay for being on "stand by" or "on call" status.

94.    Specifically, Section 5.03(d)(8) of Defendant's Employee Manual provides that "Full-Time Non-Exempt employees on "Stand By" (or "On Call") shall receive two (2) hours at Straight Time, Monday-Friday, four (4) hours at Straight Time on weekends, and six (6) hours of Straight Time on holidays."

95.    Defendant should have included the payments made to employees for "Stand By" compensation in calculating the regular rate to be paid to those employees and thus in calculating the overtime compensation rate to be paid to those employees.

96.    However, upon information and belief, Defendant did not either count the "stand by" time as time worked for purposes of calculating the number of overtime hours (for example, Defendant did not pay for the "stand by" time at an overtime rate of pay, even when it would have counted as hours in excess of forty in a workweek if treated as work time) or include any amount on account of the stand by compensation in calculating employees' overtime rate of pay.

97.    Defendant's failure to include the "stand by" or "on call" compensation in calculating overtime rates of pay violated the FLSA. See 29 C.F.R. § 778.223.

98.    Plaintiff and similarly-situated employees were deprived of overtime compensation by Defendant's failure to include all compensation for work performed in its calculation of overtime rates.

### Defendant Illegally Refuses To Treat Employee Attendance At Required Events As Part Of Hours Worked For Purposes Of Calculating Overtime Pay

99.    As a result of Defendant's failure to pay the correct amount of overtime pay, Plaintiff and the similarly-situated employees were each deprived of overtime compensation

during the three years preceding the filing of this Complaint.

100. Defendant required Plaintiff and similarly-situated employees to attend certain community events.

101. For instance, Plaintiff and similarly-situated employees were required to attend the "Hooray for Harriman" event held as a community event in downtown Harriman annually on or around Labor Day.

102. Upon information and belief, Defendant excluded the hours that employees were required to attend and work the Harriman Utility Board booth/station at the "Hooray for Harriman" event from its calculation of the number of hours worked by the employees for purposes of calculating whether or not the employee had worked forty hours in the work week and for purposes of determining whether an employee should be paid overtime pay.

103. In addition, Defendant required certain employees to attend meetings of the Harriman Utility Board.

104. For example, HUB Manager Frankie Davis strongly encouraged employees to attend despite maintaining a pretense that he was not officially requiring employees to attend.

105. Specifically, Mr. Davis talked to the employees regarding the importance of attending HUB board meetings and being aware of what was going on and who was making the decisions, stating that he felt like it was really important.

106. HUB General Manager Candace Vannasdale has done the same thing with her employees, telling them it was a really good idea to attend the meetings.

107. As a result, all or almost all of the subordinates of Mr. Davis would regularly attend every regularly scheduled meeting of the Harriman Utility Board board.

108. In general, the communications from HUB management to employees was that they

were required to attend these events; to the extent Defendant made any comment or statement to the effect that attendance was voluntary or that an employee was not required (or "not officially required") to attend, those comments were inconsistent with other comments made by Defendant's management and the comments of Defendant's management, taken as a whole, were consistently and reasonably interpreted by all of Defendant's workforce as communicating to employees that they were required to attend these functions and that they would have repercussions from Defendant's management, such as having non-attendance held against them in connection with performance reviews and eligibility for promotions, if they did not attend these functions.

109. Defendant did not pay employees for their time attending these events and did not include the time spent at these events in calculating when to begin paying overtime compensation (i.e., calculating when an employee began working more than forty hours in a work week).

110. As a result of Defendant's failure to include employees' time spent attending required events as time Defendant credited each employee with working, Plaintiff and the similarly-situated employees were deprived of overtime compensation which should have been paid to them.

### Defendant Automatically Deducted Time For Lunch Despite The Fact That Employees Did Not Always Receive Full Lunch

111. Defendant automatically deducted from each employee a specific amount of time for that employees' lunch.

112. However, employees did not always receive the full amount of time for lunch and Defendant knew or should have known employees did not always receive the full amount of time for lunch.

113. In addition to not paying for time when lunches were shorter than scheduled, Defendant also imposed restrictions on lunches that had the practical effect of prohibiting

employees from using the lunch time for the employees' own purposes.

114.    For instance, Plaintiff and similarly-situated employees were, following the inception of the Covid-19 pandemic, prohibited from taking lunch as they had previously been permitted to do and were instead required to remain on Defendant's work-site for lunch.

115.    During these lunches, Plaintiff and the similarly-situated employees were prohibited from traveling anywhere and were forced to remain at the work-site, which was often a utility right of way in "the middle of nowhere"; Plaintiff and the similarly-situated employees were prohibited from going home or attending to errands during this "lunch break" time.

116.    Because this time was not a *bona fide* rest break during which Plaintiff and the similarly-situated employees were relieved of duties, but Plaintiff and similarly-situated employees were instead required to stay at the work site, these "lunch break" time periods should have been treated as hours worked for purposes of calculating whether or not employees were entitled to overtime compensation.

117.    However, on the occasions when an employee did not receive the full amount of time for lunch, Defendant would nevertheless deduct automatically the full amount of time for lunch.

118.    As a result of Defendant's practices of not paying for time spent working during lunch when employees did not take the full amount of time provided for lunch and Defendant's practice of requiring Plaintiff and similarly-situated employees to remain on work sites during their break, depriving Plaintiff and the similarly-situated employees of the ability to use those time periods for their own purposes, Plaintiff and the similarly-situated employees were deprived of overtime compensation which should have been paid to them.

**Defendant's Time-Keeping Violations Also Deprived Employees of Premium Pay for Non-Overtime Work in Excess of Eight Hours in a Day**

119.     In addition to not paying overtime compensation when employees would work more than forty hours in a work week as required by federal law, because of its illegal practices of shaving start and stop times, not treating time at required events as work time, and automatically deducting lunch time even when employees did not receive all of that time for lunch, Defendant also did not pay employees the correct amount of premium pay for time worked in excess of eight hours (or sixteen hours) in a workday, despite having promised its employees that it would do so.

120.     Specifically, Defendant's Employee Policy Manual provides, at Section 5.03, the following:

PAY FOR FULL TIME, NON-EXEMPT EMPLOYEES
A.      In general, the following applies to Full Time, Non-Exempt employees:
        1.      A Full Time employee works the standard working hours set by HUB each week.
        2.      Non-Exempt employees receive overtime in compliance with the Fair Labor Standards Act (FLSA), and with HUB's overtime policy.

B.      Non-Exempt employees will use Time Cards to record his/her hours worked, including approved hours beyond his/her standard hours.  Non-Exempt employees will "clock-in" when he/she report for duty, and "clock out" when released….

D.      Full-Time Non-Exempt employees will be eligible for Overtime (pay for hours worked in excess of an eight (8)-hour working day) as approved by the Supervisor or Department Manager.  Overtime will be calculated as follows:
        1.      Hours worked in continuation of an eight (8)-hour working day shall be paid at one and one-half of the Straight Time rate (except as otherwise defined within this policy) until released from duty….
        3.      Any Full-Time Non-Exempt employee required to work for sixteen (16) continuous hours may be given a rest period of up to six (6) hours, paid at double the Straight-Time rate, provided he/she will return to duty immediately following said rest period.  Any hours worked consecutively beyond sixteen (16) hours, including any rest period up to six (6) hours, shall be paid at double the Straight-Time rate until such time the Exmployee is able to "clock out" for more than six (6) hours.

121.     Defendant failed, because of its time-keeping practices discussed above, to

compensate employees based on the actual amount of time employees worked, and as a result violated its promise to Plaintiff and similarly-situated employees that it would pay employees the premium pay for hours worked in excess of eight (or sixteen) hours in a day.

## Collective Action Allegations

122.    Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

123.    Plaintiff desires to pursue his FLSA claims on behalf of himself individually and on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b); Plaintiff proposes that other employees may opt-in using the blank consent form attached hereto as Exhibit 12 and Plaintiff himself has executed a consent to bring this action, a copy of which is attached hereto as Exhibit 13.

124.    Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant's previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime compensation for hours worked over forty (40) during the workweek.

125.    Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common compensation, timekeeping and payroll practices.

126.    Specifically, Defendant failed to compensate Plaintiff and the similarly-situated employees for all overtime hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

127.    The similarly situated employees are known to Defendant and are readily

identifiable and may be located through Defendant's business records.

128.    The similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail, email and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.[7]

### Class Action Allegations Pursuant to Federal Rule of Civil Procedure 23 Relating to Defendant's Violation of Tennessee Common Law

129.    Plaintiff brings this action under Tennessee common law on behalf of himself and all similarly-situated current and former employees of Defendant who worked for Defendant and were not fully-paid for work for which Defendant should have paid within the last six years.

130.    Stated another way, Plaintiff seeks to bring this action as a class action under Tennessee common law on behalf of the following persons:

> All current and former hourly employees of Defendant who worked more than eight hours in any workday during the applicable limitations period and was not fully paid all compensation owed relating to that work in excess of eight hours.

131.    Plaintiff is a member of the class he seeks to represent.

132.    Defendant failed to pay Plaintiff and the members of the class he seeks to represent wages and agreed compensation for work performed, as described herein, in violation of Tennessee law, including Tennessee common law.

133.    Under Tennessee common law, and, indeed, under common law dating back to

---

[7]    To ensure that Defendant is aware, with respect to individuals who opt-in to this action who incur damages after the filing of this action as a result of Defendant continuing its illegal practices after the filing of this Complaint, (a) such damages will be sought in this action and (b) such continuation will be used as further evidence of Defendant's willfulness in violating the FLSA prior to the filing of this action.

Biblical times, a worker has a common-law right to receive wages earned from the employer.

134.    Defendant and its employees (including Plaintiff and those similarly-situated) expressly and through implication agreed and reached mutual assent that employees would be paid premium pay for all hours worked in excess of eight hours in a day.

135.    Defendant, however, after requiring or permitting its employees to perform work in excess of eight hours in a workday, failed to pay Plaintiff and the similarly-situated employees the premium pay for all of that work.

136.    Accordingly, Defendant's refusal to pay Plaintiff and the similarly-situated employees for all of the hours that Plaintiff and the similarly-situated employees actually worked violated Tennessee law and entitles Plaintiff and the similarly-situated employees to damages under Tennessee common law.[8]

137.    Upon information and belief, the Rule 23 class is sufficiently numerous that joinder of all members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1).

138.    All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2).  Namely, all members of the Rule 23 class share the question of whether Defendant paid them for all time worked.

139.    The claims of Plaintiff are typical of the claims of the Rule 23 Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3).  Defendant's failure to pay Plaintiffs for all hours worked was not the result of any circumstances specific to the Plaintiff.  Rather, it arose from Defendant's common pay policies, which Defendant applied generally to its employees.

140.    Plaintiff will fairly and adequately represent and protect the interests of the Rule 23

---

[8]     Plaintiff seeks all wages which Defendant should have, but did not, pay to the Rule 23 class in (A) the six years preceding the filing of this action and (B) after the filing of this action through the date of trial.

Class.

141.    Further, Plaintiff has retained competent counsel experienced in representing classes of employees related to such employees' employer's failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

142.    By failing to pay Plaintiff and similarly-situated employees for all hours worked, and failing to pay employees the full amount of premium pay earned, Defendant has created the circumstance under which questions of law and fact common to the Rule 23 Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff should be permitted to pursue the claims herein as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

## COUNT I

### Violation of the FLSA: Failure to Properly Pay Overtime Compensation
### (On Behalf of Plaintiff and the FLSA Collective)

143.    All previous paragraphs are incorporated as though fully set forth herein.

144.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate.  *See* 29 U.S.C. § 207(a)(1).

145.    Defendant is subject to the wage requirements of the FLSA because Defendant is an employer under 29 U.S.C. § 203(d).

146.    At all relevant times, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

147.    During all relevant times, Plaintiff and the members of the FLSA Collective were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

148. During all relevant times, Plaintiff and the Collective Members were not exempt from the requirements of the FLSA.

149. Plaintiff and the Collective Members each worked more than forty (40) hours in one or more workweeks without overtime compensation and are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

150. Defendant's compensation scheme applicable to Plaintiff and the members of the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

151. Defendant knowingly failed to properly compensate Plaintiff and the Collective Members for all hours worked when they worked in excess of forty (40) hours per week, including by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

152. Defendant also, with respect to its practices of not tracking employee lunch time and not tracking time employees spent attending required events, failed to create, keep, and preserve records with respect to work performed by the Plaintiff and the Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

153. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

154. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendant, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II

### Breach of Contract: Failure to Pay For All Work Performed
### (On Behalf of Plaintiff and Rule 23 Class)

155.    All previous paragraphs are incorporated as though fully set forth herein.

156.    Defendant's failure to pay Plaintiff and the members of proposed Rule 23 Class constituted violation of an express and/or implied-in-fact contract between employer and employee that employees would be paid for all work performed, including being paid premium pay for all work performed in excess of eight hours in a workday.

157.    Plaintiff and the members of proposed Rule 23 Class should be granted a judgment against Defendant for damages for Defendant's breach of contract, including the wages owed by Defendant for its failure to pay for all work performed, including its failure to pay premium pay for all work performed in excess of eight hours in a workday, plus pre-judgment interest thereon.

## COUNT III
### Unjust Enrichment: Failure to Pay For All Work Performed
### (On Behalf of Plaintiff and Rule 23 Class)

158.    All previous paragraphs are incorporated as though fully set forth herein.

159.    Defendant's acceptance of the benefit of the work of Plaintiff and the members of the proposed Ruled 23 class, while Defendant failed to pay Plaintiff and the members of proposed Rule 23 Class for all work performed, constitutes unjust enrichment; it would be unjust to not require Defendant to compensate Plaintiff and the other members of the proposed Rule 23 class for their work.

160.    Plaintiff and the members of proposed Rule 23 Class should be granted a judgment against Defendant for damages for Defendant's unjust enrichment, including the wages owed by Defendant for its failure to pay for all work performed and not covered under the FLSA (such as unpaid wages for hours worked and not compensated in weeks in which less than forty hours of

25

work were performed, or for hours between the scheduled number of hours and forty hours per week when the Defendant only paid for the scheduled number of hours despite the employee working additional hours), plus pre-judgment interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

a. The issuance of process, and the bringing of Defendant before the Court;

b. An order directing Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c. An order certifying a class of similarly-situated employees for purposes of Plaintiff's state law claims of non-payment of wages;

d. A jury trial on all issues of fact;

e. A judgment against Defendant in favor of Plaintiff, the members of the FLSA Collective and the members of the Rule 23 class for unpaid wages and compensatory damages and prejudgment interest to the fullest extent permitted under the law;

f. A judgment against Defendant in favor of Plaintiff and the members of the FLSA Collective for liquidated damages to the fullest extent permitted under the law;

g. A judgment against Defendant in favor of Plaintiff and the members of the FLSA Collective for litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h. Such other and further relief to which Plaintiff, the FLSA Collective and/or the Rule 23 Class is entitled or which this Court otherwise deems just and proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster (#023636)
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff Joshua Hackworth*